UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Timothy L. Wright, #331298, | C/A No. 5:14-cv-02219-TMC-KDW |
| Plaintiff, | |
| v. | Report and Recommendation |
| Sergeant Charles Turbide, | |
| Defendant. | |

Plaintiff, an inmate with the South Carolina Department of Corrections (*"SCDC"*) proceeding pro se, filed this 42 U.S.C. § 1983 action alleging that Defendant violated his constitutional rights. This matter is before the court on Defendant's Motion for Summary Judgment, ECF No. 57, filed on January 5, 2015. The court entered a *Roseboro* Order[1] on January 6, 2015, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 58. Plaintiff filed a Response in Opposition to Defendant's Motion on January 20, 2015, ECF No. 65, and Defendant filed a Reply to Plaintiff's Response on January 30, 2015, ECF No. 67. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Because this Motion is dispositive, a Report and Recommendation is entered for the court's review.

---

[1] The court entered a *"Roseboro* order*"* in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring that the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

I.      Background

Plaintiff, Timothy L. Wright, is an inmate currently housed at Lieber Correctional Institution. ECF No. 1 at 2. Plaintiff filed his Complaint on June 9, 2014, alleging a cause of action for excessive force in violation of the Eighth Amendment. *Id.* Specifically, Plaintiff contends that on April 4, 2012, Defendant ordered him to remove a state jumpsuit from his cell window while Plaintiff was using the bathroom. *Id.* at 3. "Upon refus[al]," Plaintiff maintains that Defendant administered a long burst of chemical munitions into Plaintiff's cell and closed the cell flap. *Id.* Plaintiff maintains that Defendant returned to his cell twice and administered additional bursts of chemical munitions "into his cell." *Id.* When Plaintiff told Defendant he was ready to come out, Plaintiff alleges that Defendant administered a final burst of chemical munitions "directly into [his] midsection lower body. . . . and slammed [Plaintiff's] cell flap close[d]" *Id.* at 3-4. Furthermore, Plaintiff alleges that:

> Upon exiting the B-wing [he] continued to suffer emotional and physical depression from the chemical munitions. After 15 to 20 minutes later Defendant along with several SCDC employees pursue the position to roll in [his] cell and restrain[] [him] upon approaching [his] cell. The SCDC employees rolled on [him] and one of the SCDC employees took his right hand and st[r]uck [Plaintiff] in [his] face aggressive (sic) manner in the head and facial area. Also, [Plaintiff] was in fear for [his] well being and life from Defendant [], and nightmares of being sprayed over and over again by Defendant.

*Id.* at 4.

In his supplemental pleading, Plaintiff adds that on April 4, 2012, he was locked in his cell alone. ECF No. 1-2 at 1. Furthermore, Plaintiff alleges that Defendant was not making a good faith effort to maintain or restore discipline when he sprayed the chemical munitions but "did so [] maliciously and sadistically to cause Plaintiff harm. . . ." *Id.* Plaintiff maintains that on April 4, 2012, he never assaulted or attempted to assault an inmate or officer, never attempted suicide, never inflicted or attempted to inflict injury to himself, never violated or displayed signs

2

of imminent violence, never attempted to escape or escaped, never attempted to destroy or destroyed any SCDC property, and never refused to obey a lawful or a direct order. *Id.* at 2.

Plaintiff requests that the court grant him declaratory judgment against Defendant, $35,000.00 in punitive damages, attorney's fees and other relief. ECF No. 1 at 5.

II.     Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). However, *"*[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.*" Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 251. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*,

3

405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    III.    Analysis

        A.  Failure to Exhaust

Defendant argues that Plaintiff's Complaint should be dismissed because Plaintiff failed to exhaust his administrative remedies before filing his § 1983 action. ECF No. 57-1 at 6-7. Specifically, Defendant argues that Plaintiff is required to file a Step One and a Step Two grievance, and here, Plaintiff admittedly only filed a Step One grievance form without seeking review of its denial. *Id.* at 7. In Response, Plaintiff argues that he filed a Step One grievance on April 8, 2012, and did not receive a response to it until March 20, 2013. ECF No. 65 at 5. Plaintiff maintains that SCDC policy requires that the Warden respond to grievances no later than forty days from the date it was entered into SCDC's system. *Id.* Further, Plaintiff alleges that final disposition of all grievances should occur within 125 days, and due to the delay in the Response to his Step One grievance, he was unable to complete the grievance process. *Id.* at 6. In Reply, Defendant does not address the reason why it took SCDC nearly ten months to respond to Plaintiff's grievance. *See* ECF No. 67. Rather, Defendant maintains that Plaintiff was required to proceed with exhausting his administrative remedies instead of waiting 15 months to file this lawsuit. *Id.* at 3.

Pursuant to 42 U.S.C. Section 1997e(a), *"*[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.*"*  This requirement "applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of all available administrative review. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739).

Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005). However, '[d]efendants may . . . be estopped from raising non-exhaustion as an affirmative defense when prison officials inhibit an inmate's ability to utilize grievance procedures.'" *Stenhouse v. Hughes*, C/A No. 9:04-23150-HMH-BHH, 2006 WL 752876, at *2 (D.S.C. Mar. 21, 2006) (quoting *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004)).

In his Motion, Defendant argues that Plaintiff failed to file a Step 2 grievance, and therefore, failed to exhaust his administration remedies prior to filing this § 1983 action. ECF No. 57-1 at 6-7. In support of his Motion, Defendant attaches the affidavit of Michael Tindal, the SCDC grievance administrator. ECF No. 57-5. Tindal attests that SCDC received Plaintiff's grievance on April 13, 2012, and the Warden issued a response to it on March 14, 2013. *Id.* ¶ 10. Tindal asserts that Plaintiff was provided with instructions on what he could do if he was not satisfied with the Warden's decision. *Id.* Tindal avers that Plaintiff took no action after receiving the Warden's response to his Step One grievance. *Id.* ¶ 11.

The undersigned finds that Defendant met his burden of demonstrating Plaintiff's failure to exhaust. *Anderson*, 407 F.3d at 683. The undersigned notes several decisions where courts have excused the exhaustion requirement where it appears that officials were thwarting a plaintiff's right to bring federal suit. *See e.g., Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (*"*[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.*"*); *Stenhouse v. Hughes*, No. CA 9:04-23150-HMH-BHH, 2006 WL 752876, at *2 (D.S.C. Mar. 21, 2006) (internal citation omitted) (*"*[E]xhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies.*"*). However, unlike the cases excusing exhaustion, here Plaintiff received a Response to his Step One grievance and rather than filing the required Step Two grievance form, he waited 15 months and then filed this action. *See e.g., Stroman v. Byars*, No. CA 1:13-805-JFA-SVH, 2013 WL 4524167, at *2 (D.S.C. Aug. 26, 2013) (finding that a period of time from February through August did not represent a period of inordinate delay where appeal of Plaintiff's denial of his grievance remained pending); *Mattress v. Taylor*, 487 F. Supp. 2d 665, 671 (D.S.C. 2007) (excusing exhaustion where plaintiff did not receive a response to grievance over a year after it was submitted).

Here, the Warden filed a Response well beyond the forty-day time line of SCDC's policies. *See Brown v. Ozmint*, No. CA 3:08-3470-CMC-JRM, 2009 WL 2595633, at *5 n. 6 (D.S.C. Aug. 19, 2009) (where the court took judicial notice of the SCDC policy requiring that "the Warden should respond to the grievant in writing within forty (40) days"). However, Plaintiff cannot maintain that he was prevented from availing himself of an administrative remedy through no fault of his own because he did not seek administrative review of the Warden's March 2013 decision and proceeded directly to court. *See Sullivan v. Coleman*, No.

CA 9:06-1588-MBS-GCK, 2006 WL 3759757, at *6 (D.S.C. Dec. 18, 2006) (*"*The record reveals that [plaintiff] abandoned his grievance by failing to complete and return the Step 2 Inmate Grievance Form, which would have been an appeal of the warden's decision with which plaintiff was dissatisfied. Plaintiff was advised of the right to file the Step 2 Inmate Grievance Form. . . .*"*); Because it is undisputed that Plaintiff did not file a Step Two Grievance after receiving the Warden's Response, the undersigned recommends granting Defendant's Motion for Summary Judgment for Plaintiff's failure to exhaust his administrative remedies. *Id.* (internal citation omitted) (*"*It is well established that the exhaustion requirement is mandatory, [] and that the requirement 'applies to all inmate suits about prison life,' whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.*"*). However, construing the facts regarding the exhaustion of his grievance in the light most favorable to Plaintiff, and out of an abundance of caution, the undersigned will address Defendant's other arguments on the merits.

    B.  Excessive Force

Defendant argues that Plaintiff cannot present sufficient evidence that Defendant violated Plaintiff's Eighth Amendment rights. ECF No. 57-1 at 7-11. Specifically, Defendant contends that by his own admissions, Plaintiff cannot prove the subjective component of his claim. *Id.* at 9. In his Response, Plaintiff argues that he will show the court that Defendant administered 247 grams of gas on him for "no just cause." ECF No. 65 at 6. Additionally, Plaintiff maintains that when he *"*leaned back to get cuffed Defendant gas[sed] him in his midsection lower body.*" Id.* at 7. In Reply, Defendant argues that Plaintiff's Response reinforces the fact that Plaintiff committed a disciplinary offense such that use of chemical munitions was justified. ECF No. 67 at 2.

The Eighth Amendment prohibition of cruel and unusual punishment *"protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To establish a constitutional excessive force claim, the inmate must establish that the *"*prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component).*" Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams*, 77 F.3d at 761). Thus, courts must analyze both subjective and objective components.

For the subjective component, Plaintiff must prove that Defendant used chemical munitions on him *"*maliciously and sadistically for the very purpose of causing harm*"* rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out *"*maliciously and sadistically*"* to cause harm: (1) the need for application of force; (2) *"*the relationship between the need and the amount of force*"* used; (3) *"*the extent of the injury inflicted*"*; and (4) *"*the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them.*" Whitley*, 475 U.S. at 321.

*"*The fact that pepper spray was used in this incident . . . does not mandate that [p]laintiff's claim go forward, as the use of mace, tear gas or pepper spray by prison officials is not a per se violation of a prisoner's constitutional rights when used appropriately.*" Townsend v. Anthony*, No. CA 0:03-2528-RBH-BM, 2006 WL 2076920, at *9 (D.S.C. July 24, 2006). The Fourth Circuit's decision in *Williams v. Benjamin*, 77 F.3d 756, provides additional guidance for courts when considering claims relating to the use of mace, tear gas, or other like substances. There, the *Williams* court recognized: *"*it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary for

8

the sole purpose of infliction of pain." *Id.* at 763 (internal citation omitted). While the use of mace on prisoners confined in their cells in not per se unconstitutional, "it is necessary to examine the totality of the circumstances, including provocation, the amount of gas used, and the purpose for which the gas is used to determine the validity of the use of tear gas in the prison environment." *Id.* (internal citation omitted). "The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis." *Id.* at 762.

Defendant argues that Plaintiff acknowledges that he failed to comply with an order to remove his jumpsuit from his cell window in his Complaint. ECF No. 57-1 at 9. Specifically, in his Complaint, Plaintiff alleges: "Upon refusing and not given any more demands or directives Defendant administer[ed] a long burst of MK-P chemical munitions [] into [Plaintiff's cell and closed the cell flap." ECF No. 1 at 3. Later, in his Response, Plaintiff admits that his jumpsuit was covering his cell window and that is why Defendant maced him. *See* ECF No. 65 at 3. However, in the same paragraph, Plaintiff denies ever refusing a directive. *Id.*; *see also* ECF No. 1-2.

Considering the first and second *Whitley* factors and the additional guidance from *Williams*, the undersigned finds the Plaintiff has failed to present evidence that demonstrates Defendant used mace for the very purpose of causing Plaintiff harm. In support of his Motion, Defendant attached his own affiidavit and indicates that from his perspective, Defendant was attempting to gain control over Plaintiff to ensure the safety and security of the institution. ECF No. 57-2 ¶¶ 7-8. Due to Plaintiff's repeated refusals to obey verbal directives, Defendant believed that chemical munitions were necessary to gain compliance from Plaintiff "to ensure the safety and security of the institution." *Id.* Defendant attests that he administered two bursts initially, and later "issued two more bursts into his cell," and "[t]he four bursts of chemical munitions totaled 247 grams." *Id.* ¶ 9. When Plaintiff continued to disobey orders, Defendant

9

avers that he assembled an extraction team, including a videographer, to forcibly remove Plaintiff from his cell. *Id.* ¶ 12. As an attachment to his affidavit, Defendant submits a picture of Plaintiff's jumpsuit blocking his cell window that can be seen in the still frame of the video taken. *Id.* ¶ 12.

No evidence demonstrates that Plaintiff ever complied with Defendant's direct order instructing Plaintiff remove his jumpsuit from the cell window. Rather, all evidence indicates that Plaintiff's jumpsuit continued to cover his cell flap and remained there until Defendant and an extraction team were assembled. Additionally, no evidence demonstrates Defendant acted with malice when he administered chemical munitions at Plaintiff. The undersigned notes that Defendant administered a total of 247 grams of chemical munitions into Plaintiff's cell. ECF No. *Id.* ¶ 9. Though this is not a small amount of mace, it is the total amount administered by Defendant after at least four attempts to compel Plaintiff's compliance with direct orders. Furthermore, the undersigned notes that Plaintiff never alleges that Defendant administered mace directly towards his face. Rather, Plaintiff alleges that Defendant sprayed mace *"into his cell"* and *"directly into midsection lower body."* ECF No. 1 at 3. Moreover, Plaintiff alleges in his Response to Defendant's Motion that *"*it is impossible for any inmate here at the LCI within SMU lock-up to get gas[s]ed in the face or facial area due to the door flap is toward the bottom of the door.*"* ECF No. 65 at 6.

In examining the third and fourth prong of *Whitley*, the undersigned notes that Plaintiff has not submitted any medical records to the court. Further, Plaintiff does not allege he was denied access to water or medical help. Therefore, Plaintiff has failed to demonstrate that he suffered an injury as a result of being exposed to mace. *See Duncan v. Gordon,* No. CA 8:06–cv–396–MBS, 2007 WL 1031939 at *8 (D.S.C. Mar. 29, 2007) (noting that prisoner's allegations that he suffered *"*breathing complications, chest pain, and mental depression from

being sprayed with chemical munitions" failed to establish a serious medical need necessary to demonstrate an Eighth Amendment violation). Under the final *Whitley* prong, the undersigned notes Plaintiff never alleges he removed his jumpsuit from his cell door, an indication that he repeatedly disobeyed Defendant's orders. The Fourth Circuit has held that a prison official may use mace to compel obedience or to subdue recalcitrant prisoners. *See Bailey v. Turner*, 736 F.2d 963, 970 (4th Cir. 1984).

The undersigned finds that Plaintiff has failed to demonstrate that Defendant acted in a malicious manner or for the sole purpose of inflicting pain on Plaintiff. Moreover, the undersigned notes that courts should give prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at 321-22. Accordingly, there is no genuine issue of material fact, and the undersigned recommends Defendant's Motion for Summary Judgment be granted on Plaintiff's excessive force claim.

C. Qualified Immunity

Defendant argues he is entitled to qualified immunity because Plaintiff has failed to show that Defendant violated any of his clearly established rights. ECF No. 57-1 at 11-13. In his Response, Plaintiff argues that Defendant's actions were not objectively reasonable, and he is not entitled to qualified immunity. ECF No. 65 at 7.

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

11

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004) (internal citation omitted). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* at 301-02 (citations and internal quotation omitted).

Based on the analysis of the facts presented in the excessive force section above and considering the facts in the most favorable light of the Plaintiff, the undersigned recommends granting Defendant qualified immunity. The record before the court shows that Defendant performed the discretionary functions of his respective official duties in an objectively reasonable fashion. Defendant did not transgress any statutory or constitutional rights of Plaintiff of which he was aware in the exercise of his respective professional judgment. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that Defendant be granted qualified immunity.[2]

---

[2] Based on the undersigned's recommendation to grant Defendant qualified immunity, Defendant's third argument regarding qualified immunity because the law was not clearly established is not addressed herein. *See* ECF No. 57-1 at 13-15.

D.  Eleventh Amendment Immunity

Defendant argues that he was acting in his official capacity and is entitled to immunity under the Eleventh Amendment. ECF No. 57-1 at 15-16.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The United States Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Because Defendant was an agent or employee of the State of South Carolina when acting in his official capacities, he is not a "person" within the meaning of 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). A state cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663.  The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15-78-20(e). As an arm of the State, Defendant, in his official capacity, is immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against Defendant in his official capacity be dismissed.[3]

---

[3] Because Plaintiff did not bring any state law claims pursuant to the South Carolina Tort Claims Act in his action, the undersigned did not address Defendant's fifth argument related to any potential state law claims. *See* ECF No. 57-1 at 16-18.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendant's Motion for Summary Judgment, ECF No. 57, be granted and that this case be dismissed. However, because the undersigned does not find Plaintiff's Complaint to have been filed frivolously, Defendant's request to consider it a strike pursuant to 28 U.S.C. § 1915(g) should be denied.

IT IS SO RECOMMENDED.

March 6, 2015                                                                                    Kaymani D. West
Florence, South Carolina                                                          United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**